IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANGELA M. PASEMAN,                              6:12-CV-00377-BR

            Plaintiff,                          OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

            Defendant.

KATHRYN TASSINARI
Drew L. Johnson, P.C.
1700 Valley River Drive, First Floor
Eugene, OR 97401
(541) 434-6466

            Attorneys for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

1  - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel, Region X, Seattle
**RICHARD M. RODRIGUEZ**
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Ste. 2900 M/S 221A
Seattle, WA 98104-7075
(206) 615-3717

      Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Angela M. Paseman seeks judicial review of the Commissioner of Social Security's final decision denying her January 23, 2008, applications for disability insurance benefits (DIB) pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and supplemental security income (SSI) pursuant to pursuant to 42 U.S.C. §§ 1381-83f.

This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner for the immediate payment of benefits pursuant to Sentence Four of 42 U.S.C. § 405(g).


**ADMINISTRATIVE HISTORY**

Plaintiff alleges she has been unable to work since November 24, 2004, because of chronic pain caused by the

2  - OPINION AND ORDER

fracture of four vertebrae in her back.  Tr. 194.  Her applications for DIB and SSI were denied initially on May 23, 2008, and on reconsideration on September 22, 2008.  Tr. 77-80.

On October 25, 2008, Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  Tr. 97.

On October 27, 2009, the ALJ initially convened a hearing on Plaintiff's DIB and SSI applications.  Plaintiff was not represented by counsel at the hearing and, by agreement, the ALJ postponed the hearing to afford Plaintiff the opportunity to seek representation of counsel.  Tr. 66-76.

On May 10, 2010, the ALJ reconvened the hearing, and Plaintiff was represented by counsel.  Plaintiff and Plaintiff's mother testified at the hearing in person and a vocational expert (VE) testified by videoconference.  Tr. 28-65.

On June 17, 2010, the ALJ issued a decision that Plaintiff is not disabled and is not entitled to DIB or SSI.  Tr. 11-23.

On August 12, 2011, the Appeals Council denied Plaintiff's request for review.  Tr. 1-5.  Accordingly, pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on October 20, 2011.

On March 2, 2012, Plaintiff filed a Complaint in this Court seeking judicial review of the Commissioner's final decision denying her DIB and SSI applications.

3  -  OPINION AND ORDER

## BACKGROUND

Plaintiff was 33 years old at the time of the hearing.  She has a tenth-grade education.  Tr. 35.  Plaintiff's past work has been as a cocktail or restaurant waitress.  She last worked in June 2004.

As noted, on May 10, 2010, the ALJ conducted an administrative hearing.

## I.    **Plaintiff's Testimony**.

In November 2004 Plaintiff injured her back going down a water slide at a water park in Puerto Vallarta.  Tr. 36-37.

Plaintiff has suffered back pain that has progressively worsened since her injury.  Tr. 38.  She can no longer use her arms to do tasks for any length of time without having to lie down because it causes her pain that starts between her shoulder blades and runs down to her lower back.  Tr. 39.  She is able to stand and to walk, but she needs to lie down, sit, or change positions usually after an hour.  Tr. 40.  She has more discomfort sitting than standing and is able to sit for approximately 15 minutes at a time.  Tr. 40.  She lies down four or five times a day for up to 30 minutes at a time.  Tr. 42

Plaintiff's treating physician, Scott H. Kitchel, M.D., told her that surgery would not effectively alleviate her pain, and a recent MRI showed her back condition will progressively get worse.  Tr. 41.

On a typical day Plaintiff watches television or visits with family members. Tr. 44. She does not do any housework, cooking, or shopping, and she does not have any hobbies. Tr. 44.

Plaintiff's main complaint is back pain. She is not depressed, however, and she tries to remain upbeat even though she gets upset at times. Tr. 47. She does not want to be prescribed narcotic pain medications because she took them for three months after she injured her back and, as a result, does not have any memory of that time. She "does not want to live like that." Tr. 48.

## II.  Lay Testimony.

Plaintiff's mother testified Plaintiff has lived with her for 40%-50% of the time since 2004 and that Plaintiff lived in Mexico the rest of the time. Tr. 51-52.

Plaintiff was physically very active and engaged in sports when she was a child and a young woman. Tr. 52. That has changed since the accident because she can no longer "do much of anything." Tr. 53.

Plaintiff is not a complainer, but her mother can tell when she is in pain because she is constantly changing positions. Tr. 53.

Plaintiff's average day includes getting up, having coffee, and visiting. She becomes frustrated when she is unable to do things. Tr. 54.

5 - OPINION AND ORDER

Plaintiff "hangs out" with her cousin, watches television, and occasionally goes grocery shopping with her mother.  Tr. 54.

Plaintiff sometimes visits a friend who lives ten minutes away.  Tr. 54.  Plaintiff's pain has worsened over time.  Tr. 55. Plaintiff relieves her pain by changing positions.  Tr. 56.  She has never received much pain relief from medications.  Tr. 56.

### III. **VE Testimony.**

The VE testified Plaintiff's most recent job as a bartender was level-3, semi-skilled, medium work.  She previously worked as a head waitress, which is a light-level skilled position as defined, but a heavy skilled position as Plaintiff performed it. Tr. 59.

The ALJ posed a hypothetical to the VE pertaining to a person of Plaintiff's age with a tenth-grade education and prior work history that included the following limitations:  A full range of light-to-sedentary work lifting or carrying ten lbs. frequently; standing, walking, and/or sitting for six hours in an eight-hour workday with normal breaks; occasionally pushing and pulling, frequently climbing ramps and stairs but never climbing ladders, ropes, or scaffolds; occasionally balancing, stooping, kneeling, crouching, crawling, and reaching overhead; and avoidance of hazards, dangerous machinery, and unprotected heights.

The VE opined these limitations would preclude Plaintiff

6  - OPINION AND ORDER

from working in her past relevant work as a bartender/waitress,
but she would be capable of working as a cashier and as a room-
service clerk, both of which are light, unskilled jobs.  If,
however, Plaintiff needed to lie down on breaks 2-3 times a day
for 30 minutes at a time or if she could only occasionally reach,
handle, or finger objects, she would not be employable.  Tr. 62-
63.

IV.  **Medical-Treatment Evidence**.

 A.  University Medical Center Emergency Room.

In November 2004 Plaintiff went to the emergency room the
day after she was hit from the rear by another person on a water
slide.  Tr. 270.  Plaintiff did not have any numbness, tingling,
or weakness, but she complained of pain in the mid-thoracic
spine, particularly in the paraspinal musculature.  Tr. 270.  A
CT scan of the thoracic and lumbar spine showed evidence of a
"superior end-plate compression fracture at T4-5 and possibly at
T9-10."  Plaintiff did not have any problem with numbness,
tingling, weakness, tenderness, or range of motion in her
cervical spine.  Plaintiff declined any back surgery at that time
and was provided with a Jewett brace.  Tr. 271.

Plaintiff was advised to return for a follow-up visit and
not to return immediately to work because of the severity of her
back injury.  Tr. 271.

B.   Neurosurgery Orthopedics and Evaluation, LLP

In December 2004 Plaintiff was treated for sharp stabbing and aching pains in her mid-back with occasional tingling in her fingertips.  Her pain level was 4 on a 1-10 scale.  Tr. 280. Plaintiff reported she had not worked since the accident. Tr. 270.  She was able to lie down for no more than three hours and to sit for no more than 30 minutes at a time.  She was able to stand and/or to walk for indefinite periods, however, because those activities were more comfortable for her.  Tr. 280.  She had experienced three bouts of nausea since the accident. Tr. 280.

C.   Peach Health Medical Clinic.

In January 2008 Family Practitioner Jill Chaplin, M.D., treated Plaintiff for back pain arising from her 2004 water-slide injury.  Plaintiff reported she did not have physical therapy after the accident, but she continued to have burning, numbness, and tingling in one area of her lower back that radiated into the left mid-shoulder area but not into the legs. Although she was not taking any pain medications, she reported she had not worked in the past three years as a bartender/ cocktail waitress because of the pain.  Tr. 283.  X-rays of Plaintiff's spine revealed "old-appearing minor fractures . . . with mild end-plate irregularities and end-plate compression involving T4-6 and T9-10."  Plaintiff's vertebral alignment was

normal.  Tr. 285.

    D.  <u>NeuroSpine Institute</u>.

In February 2008 Dr. Kitchel, a back surgeon, examined Plaintiff at the request of Dr. Chaplin and diagnosed Plaintiff with thoracic disc degenerative disease with no obvious fracture, instability, or bony destruction.  Dr. Kitchel advised Plaintiff that surgical intervention would not benefit her, and he recommended a chronic pain-management program.  Tr. 291.

In January 2010 an MRI of Plaintiff's thoracic spine showed "mild old benign compression fractures at T4-6, and a mild broad disc bulge at T6-7," but "no evidence of acute fracture, focal disc herniation, or spinal cord compression."  Tr. 324.

In April 2010 Dr. Kitchel opined Plaintiff had not had "any resolution of her pain disorder or ongoing symptoms," and "she is unable to hold down a full-time job considering the daily pain she has and the limited use of her extremities."  Tr. 305.

    E.  <u>Sacred Heart Medical Center</u>.

In August 2009 Gary Young, M.D., treated Plaintiff on an emergency basis for chronic back pain.  Tr. 294.

**V.   Medical Evaluation Evidence by Examining Physician.**

In February 2010 Paul C. Coehlo, M.D., examined Plaintiff on behalf of the Commissioner.  Plaintiff stated she was in constant pain aggravated by any physical activity except lying down. Plaintiff's cervical and hip ranges of motion were "full and

painless," but her thoracic and lumbar ranges of motion were "self-limited by pain." Dr. Coehlo diagnosed chronic left thoracalgia and depression.

Dr. Coehlo reviewed previous films of Plaintiff's thoracic spine and opined "the axial images" showed "normal alignment with no scoliosis or coronal field deformity" and the "lateral images "show scattered age-appropriate, spondylosis." Tr. 301.

Dr. Coehlo further opined Plaintiff exhibited "symptom amplication behavior," and she "would not be limited in her ability to sit, stand, walk, lift, or carry secondary to her thoracic spine complaints." Tr. 302. Dr. Coelho opined Plaintiff's "pain may be more related to chronic depression rather than to intrinsic spinal pathology." He recommended a "full psychological evaluation of her depression prior to a determination of disability." Tr. 302.

**V1.  Medical Consultation Evidence by Reviewing Physicians.**

In March 2008 Richard Alley, M.D., reviewed Plaintiff's medical records for the Commissioner and opined Plaintiff's testimony was not credible because her alleged pain and severe functional limitations were not consistent with the medical evidence.

In September 2008 Martin Kehrli, M.D., also reviewed Plaintiff's medical records and concluded Plaintiff has nonsevere

chronic thoracic spine pain and recommended denial of DIB and
SSI.

## STANDARDS

The initial burden of proof is on the claimant to establish
disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir.
2005). To meet this burden, a claimant must prove her inability
"to engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which . . .
has lasted or can be expected to last for a continuous period
of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The
Commissioner bears the burden of developing the record. *Reed v.
Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec.
Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial
evidence means more than a mere scintilla, but less than a
preponderance, i.e., such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." *Robbins v.
Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal
quotations omitted).

The ALJ is responsible for determining credibility and

resolving conflicts and ambiguities in the medical evidence. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

In Step Two, the claimant is not disabled if the

12 - OPINION AND ORDER

Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  *Stout*, 454
F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520©, 416.920©.

   In Step Three, the claimant is presumed conclusively disabled
if the Commissioner determines the claimant's impairments meet or
equal "one of the Listed Impairments that the Commissioner
acknowledges are so severe as to preclude substantial gainful
activity."  *Stout*, 454 F.3d at 1052.  Listed Impairments are
enumerated in 20 C.F.R. part 404, subpart P, appendix 1.  *See
also* 20 C.F.R. §§ 404.1520(d), 416.920(d).

   If the Commissioner proceeds beyond Step Three, he must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite her limitations.  20 C.F.R.
§§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling
(SSR) 96-8p at *1 ("A 'regular and continuing basis' means 8
hours a day, for 5 days a week, or an equivalent schedule.  In
other words, the Social Security Act does not require complete
incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284
n.7 (9th Cir. 1996).  Assessment of a claimant's RFC is at the
heart of Steps Four and Five of the sequential analysis engaged
in by the ALJ when determining whether a claimant can still work
despite severe medical impairments.  An improper evaluation of

the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may meet this burden through testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner does meet this burden, the claimant is found not to be disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## **THE ALJ'S FINDINGS**

In Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 27, 2008, the alleged

14 - OPINION AND ORDER

onset date of her disability.  Tr. 23.

In Step Two, the ALJ found Plaintiff has severe impairments of chronic thoracalgia (upper-back pain), status post-thoracic compression fractures, and chronic pain.

In Step Three, the ALJ found Plaintiff's impairments do not meet or equal any listed impairment.  The ALJ found Plaintiff has the RFC to perform light work limited to lifting and carrying ten lbs. frequently; standing, walking, and sitting for six hours in an eight-hour workday with the ability to change sitting and standing positions every hour; occasionally pushing and pulling with her arms; frequently climbing ramps and stairs, but not ladders, ropes, and scaffolds; and occasionally balancing, stooping, kneeling, crouching, crawling, and reaching overhead. The ALJ also found Plaintiff should avoid moderate vibration of her upper body and hazards such as dangerous machinery and heights.  Tr. 17.

Based on these findings, the ALJ concluded Plaintiff was unable to perform her past relevant work as a waitress and bartender.  Tr. 28.

At Step Four, the ALJ found jobs exist in significant numbers in the national economy that would accommodate Plaintiff's ability to perform light work within her limitations, including cashier (with a sit/stand option), parking-lot attendant, and hotel-room service attendant.  Tr. 22.

15 - OPINION AND ORDER

As a result, the ALJ concluded Plaintiff is not disabled and, therefore, is not entitled to DIB or SSI.  Tr. 30.

## DISCUSSION

Plaintiff contends the ALJ erred by failing (1) to give legally sufficient reasons for rejecting the opinion of Dr. Kitchel, Plaintiff's treating physician; (2) to give clear and convincing reasons for not crediting Plaintiff's testimony regarding the severity of her physical impairments; (3) to order a psychological evaluation of Plaintiff; and (4) to establish that Plaintiff is capable of performing other work in the national economy.

## I.  **The ALJ's Rejection of Dr. Kitchel's Opinion.**

The ALJ did not give any weight to the opinion of treating physician Dr. Kitchel based in part on the limited occasions that Dr. Kitchel treated Plaintiff.  Instead the ALJ accepted the opinion of Dr. Coelho, an examining physician, that Plaintiff's pain may not be as severe as she alleges even though the ALJ did not follow up on Dr. Coelho's recommendation that Plaintiff undergo a full psychological examination to determine whether she suffered from chronic depression before making a disability determination.

In addition, the ALJ gave significant weight to the reviewing physicians' opinions "insofar as they agree with a

16 – OPINION AND ORDER

decision of 'not disabled.'"  Tr. 21.

**A.  Standards.**

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are supported by substantial evidence in the record.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011).  The opinion of a treating physician is "given greater weight than the opinions of other physicians."  *Kelly v. Astrue,* No. 10-36147, 2012 WL 767306, at *1 (9th Cir. 2012)(quoting *Smolen v. Chater,* 80 F.3d 1273, 1285 (9th Cir. 1996)).

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995).  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Taylor,* 659 F.3d at 1233 (quoting *Lester*, 81 F.3d at 831).  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate her reasons for doing so with specific and legitimate reasons supported by substantial evidence.  *See, e.g., Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008).

A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

**B. Analysis.**

As noted, Dr. Kitchel saw Plaintiff infrequently between February 2008 and April 2010, but he ultimately opined Plaintiff was unable to engage in substantial gainful activity because of her ongoing daily back pain and the limited use of her extremities. The ALJ rejected Dr. Kitchel's opinion on the ground that Dr. Kitchel's ultimate opinion was inconsistent with the "objective findings by CT, MRI and xray, which all indicate rather benign findings." Tr. 21. Accordingly, the ALJ found Dr. Kitchel's treatment notes did not "corroborate limited use by Plaintiff of her upper extremities." The ALJ also pointed out that Dr. Kitchel did not appear to have treated Plaintiff on a consistent basis. Tr. 20.

The ALJ, however, credited the opinion of Dr. Coelho, who examined Plaintiff on one occasion for the Commissioner and who "persuade[d]" the ALJ that Plaintiff's back pain was not as severe as she alleged based on Dr. Coehlo's "thorough and descriptive evaluation of claimant and her symptoms." Although Dr. Coelho reviewed Plaintiff's medical records, including old x-rays, Dr. Coelho did not mention the x-ray evidence of

18 - OPINION AND ORDER

Plaintiff's fracture in his report and, in fact, explicitly
stated Plaintiff's "imaging studies do not confirm a compression
fracture."  That opinion is contrary to the medical record
and, indeed, to the facts relied on by the ALJ.  Tr. 302.
Specifically, the Court notes the ALJ found Plaintiff, at the
minimum, had an old back injury resulting from a prior fracture
that causes her chronic back pain sufficient to preclude her from
performing her past relevant work as a bartender and waitress.
That finding is consistent with Dr. Kitchel's findings and his
disability opinion.  Tr. 21.  In addition, the ALJ did not accept
Dr. Coehlo's recommendation that a full psychological evaluation
of Plaintiff should be performed to determine whether Plaintiff
suffered from chronic depression.

The Court notes the ALJ found Plaintiff had an old back
injury resulting from a prior fracture that causes her chronic
back pain sufficient to preclude her from performing her past
relevant work as a bartender and a waitress.  That finding is
more consistent with Dr. Kitchel's opinion as to Plaintiff's
limitations and disability than the opinion of Dr. Coelho.
Moreover, although Dr. Coelho reviewed Plaintiff's medical
records, including old x-rays, Dr. Coelho did not mention the x-
ray evidence of the fracture in his report and, in fact, stated
Plaintiff's "imaging studi8es do not confirm a compression
fracture."  That opinion is contrary to the medical record and,

19 - OPINION AND ORDER

in fact, contrary to the facts relied on by the ALJ.  Tr. 302.

On this record the Court concludes the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for giving little weight to the opinion of Dr. Kitchel, Plaintiff's treating physician, and for only partially accepting the contradictory opinion of Dr. Coehlo, examining physician.

II.  **The ALJ's Rejection of Plaintiff's Testimony.**

Although the ALJ found Plaintiff suffers from severe chronic back pain, the ALJ discounted Plaintiff's testimony regarding its severity because Plaintiff did not regularly take pain medication or seek pain management/physical therapy as recommended by Dr. Kitchel.  The ALJ particularly noted a break in Plaintiff's treatment for three years from 2005 to 2008.

The ALJ also pointed out that Plaintiff continued to fly to and from Mexico and used funds for that purpose rather than obtaining treatment.  Plaintiff, however, stated in a letter to the Appeals Council that her parents funded the airplane trips she made to Mexico during the five years after the accident. Tr. 261.

**A.  Standards.**

In *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986), the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce

20 - OPINION AND ORDER

objective medical evidence of an impairment or impairments, and
she must show the impairment or combination of impairments could
reasonably be expected to produce some degree of symptom.  The
claimant, however, need not produce objective medical evidence of
the actual symptoms or their severity.  *Smolen,* 80 F.3d at 1284.
If the claimant satisfies the above test and there is not any
affirmative evidence of malingering, the ALJ can reject the
claimant's pain testimony only if she provides clear and
convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742,
750 (9th Cir. 2007)(citing *Lester,* 81 F.3d at 834).  General
assertions that the claimant's testimony is not credible are
insufficient.  *Id.*  The ALJ must specifically identify the
testimony that is not credible and the evidence in the record
that undermines the claimant's complaints.  *Parra,* 481 F.3d at
750 (citing *Lester,* 81 F.3d at 834).

**B. Analysis.**

The Court concludes the limited treatment that Plaintiff
sought does not adversely reflect on Plaintiff's credibility
regarding the severity of her back impairment.  Plaintiff
testified she has suffered from chronic pain since the accident;
Dr. Kitchel offered medical treatment evidence that supports
Plaintiff's testimony; and the ALJ, in fact, found Plaintiff
suffers from severe pain chronic as a result of that accident.
The ALJ only disagreed with Dr. Kitchel's opinion that the

chronic pain Plaintiff suffers from prohibits her from holding "down a full-time job considering the daily pain she has and the limited use of her extremities."  Tr. 305.

On this record the Court concludes the ALJ's reasons for not crediting Plaintiff's testimony regarding the severity of her back impairment are not legally sufficient or supported by substantial evidence in the record.

**III. The Failure to Order a Psychological Evaluation.**

After his examination of Plaintiff, Dr. Coehlo recommended Plaintiff undergo a psychological evaluation because of her "abundant pain behavior."  Plaintiff contends the ALJ erred by not following up on that recommendation.  Although Dr. Coehlo suggests Plaintiff's pain complaints may have a psychological component, there is not any medical evidence in the record to suggest that Plaintiff suffers from a psychological impairment bearing on whether she is disabled and, therefore, entitled to DIB and SSI.

**IV.  Availability of Other Work.**

Plaintiff asserts the Commissioner did not meet his burden by proving there was other work in the national economy that Plaintiff was capable of performing.

Based on the Court's finding that the ALJ erred when she rejected Dr. Kitchel's opinion regarding Plaintiff's limitations, the Court concludes the hypothetical presented by the ALJ to the

VE did not contain an accurate description of Plaintiff's
physical limitations.  In addition, the VE testified Plaintiff
would be unemployable if she needed to lie down on breaks
2-3 times a day for 30 minutes at a time or if she could only
occasionally reach, handle, or finger objects.  Thus, if these
limitations found by Dr. Kitchel had been included in the ALJ's
hypothetical to the VE, the VE would have found Plaintiff is
unemployable.  Tr. 62-63.


## REMAND

The Commissioner bears the burden of developing the record.
DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty
to further develop the record, however is triggered only when
there is ambiguous evidence or when the record is inadequate to
allow for proper evaluation of the evidence.  *Mayes v. Massanari*,
276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or
for immediate payment of benefits is within the discretion of the
court and generally turns on the likely utility of further
proceedings.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.
2000).  *See also Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d
1157, 1164 (9th Cir. 2012).  "If additional proceedings can

remedy defects in the original administrative proceeding, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).  If, however, "a rehearing would simply delay receipt of benefits, reversal is appropriate." *Id*.  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Brewes*, 682 F.3d at 1164 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

The Ninth Circuit has established a three-part test for determining when evidence should be credited and benefits immediately awarded.  *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).  The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.*  The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *See, e.g.*, *Harman*, 211 F.3d at 1178 n.2.

Here the Court has found the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for discrediting the opinions of Dr. Kitchel.  The Court, therefore, credits Dr. Kitchel's opinion as true.  *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d at 1233 ("Even if [a treating physician's] opinion is contradicted by other evidence in the record," his opinion as treating physician may not be rejected unless the ALJ provides "specific and legitimate reasons . . . supported by substantial evidence in the record."). *See also Lester v. Chater,* 81 F.3d at 830 (improperly-rejected physician opinion is credited as a matter of law).  Based on this record and in the exercise of its discretion, the Court, therefore, concludes no useful purpose would be served by a remand of this matter for further proceedings. *See Harman*, 211 F.3d at 1178.

Accordingly, the Court remands this matter to the Commissioner for the immediate calculation and payment of benefits to Plaintiff.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner for the

immediate calculation and payment of benefits pursuant to
Sentence Four of 42 U.S.C. §405(g).

IT IS SO ORDERED.

DATED this 30th day of April, 2013.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge